**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Criminal No. GLR-19-318** |
| **SEAN WESTON,** | * | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**GOVERNMENT'S CONSILIDATED OPPOSITION TO
DEFENDANT'S MOTIONS TO DISMISS THE INDICTMENT**

The United States of America, by and through its undersigned counsel, hereby responds to Defendant Weston's motions to dismiss the indictment on grounds of prosecutorial misconduct, selective prosecution, and vindictive prosecution [ECFs 807 and 808], fraud upon the Court [ECF 814], and ineffective assistance of counsel [ECF 815].  Weston's motions seek the extraordinary remedy of dismissal of the indictment.  Because Weston has not made a showing that his right to a fair trial has been prejudiced by any of the conduct he complains about, or that he is the subject of a selective or vindictive prosecution, his motions should be denied.

Weston's motions allege that the Government committed prosecutorial misconduct in connection with applying for and obtaining a search warrant for Weston's residence on July 17, 2019, and in connection with Weston's subsequent detention hearing on July 19, 2019.  This consolidated response addresses the alleged prosecutorial misconduct relating to Weston's detention hearing, as well as his selective prosecution, vindictive prosecution, and ineffective assistance of counsel claims.  Weston's allegations of prosecutorial misconduct relating to alleged Fourth Amendment violations are addressed in the Government's Consolidated Response to Defendant's Motions to Suppress Evidence filed on the same day as this response.

I.    **ALLEGED PROSECUTORIAL MISCONDUCT**

Weston filed two motions to dismiss the indictment for alleged prosecutorial misconduct [ECFs 807 and 808].  They appear to be substantially the same, but with some of the paragraphs renumbered in the second motion [ECF 808].  As such, the Government will refer to [ECF 808] when citing to Weston's motion to dismiss the indictment for alleged prosecutorial misconduct.

Weston asserts that former Assistant U.S. Attorney Matthew DellaBetta ("AUSA DellaBetta"), who represented the United States at Weston's detention hearing, committed prosecutorial misconduct by making the following statements at the hearing:

- "[Mr. Weston] is intrinsically involved with this criminal street enterprise." Tr. at 14.[1]

- "He is fueling this gang.  And he is dealing with them.  He is operating with them.  They listen to him."  Tr. at 14.

- "[T]he evidence will show that he is a fundamental part of the enterprise." Tr. at 10.

- "[H]e is intrinsically tied to this criminal enterprise.  He is not merely a supplier.  He is helping run them."  Tr. at 15.

- "[H]e has allied himself with gangs and he is helping them . . ."  Tr. at 29.

- "[H]e is in bed with this enterprise."  Tr. at 29-30.

[ECF 808 at ¶5].

Weston further alleges that AUSA DellaBetta committed misconduct by stating that Weston owned and operated the Opaque business, [ECF 808 at ¶6] and that the Government "committed fraud upon the court" because Special Agent Lee Ratliff and AUSA DellaBetta consistently stated "to this Court verbally and in pleadings that Mr. Weston owns the Opaque

---

[1] References to "Tr." are references to the transcript of the detention hearing held on July 19, 2019, before the Honorable A. David Copperthite [ECF 271].

Store."  [ECF 814 at ¶4].

Weston further claims that "DellaBetta blatantly lied that an I-Pad belonging to Sean Weston was recovered from inside the Opaque business."  [ECF 808 at ¶7].  Citing *United States* v. *Mitchell*, 1 F 3d 235, 240 (4th Cir. 1993), and *United States* v. *Sheetz*, 293 F. 3d 175, 185 (4th Cir. 2002), Weston claims that AUSA DellaBetta's conduct "affected his substantial rights so as to deprive him of a fair trial."  [ECF 808 at ¶9].

## II.   __BACKGROUND__

### A.   **Defendant's Detention Hearing**

On July 19, 2019, Weston and then co-defendant Ronald McCormick appeared before the Honorable A. David Copperthite for a detention hearing.  AUSA DellaBetta appeared on behalf of the United States and proffered to the Court evidence and argument in support of the Government's detention motion.   AUSA DellaBetta's proffer and argument as it relates to Weston are summarized below.

AUSA DellaBetta described a "long-term" investigation conducted by the Drug Enforcement Agency of an enterprise known as the "Liberty and Garrison Enterprise," comprised of members and associates of the Crips street gang and the Black Gorilla Family, that operated in northwest Baltimore and was engaged in "illegal drug sales of heroin, fentanyl, marijuana, cocaine, cocaine base as well as prescription pills, other controlled substances."  Tr. at 4.  "Additionally members of this criminal enterprise frequently, and almost every single member that has appeared before the Court, has possessed illegal firearms."  *Id*.  AUSA DellaBetta described how wiretaps were used in the investigation to intercept phone calls on McCormick's cell phone, and that "McCormick was intercepted discussing drug trafficking in code, discussing gang activity and also discussing the illegal possession of firearms."  Tr. at 5.  AUSA DellaBetta identified the Opaque store at 3316 Ayrdale Avenue as a location where "McCormick would, along with several other

senior members of the enterprise, supply drugs that then were sold on the street in the 3300 block of Ayrdale Avenue." *Id*.

AUSA DellaBetta detailed how an intercepted call on McCormick's phone in February of 2019 led to a DEA stop of McCormick, resulting in the recovery of "multiple gel capsules and vials of heroin and suspected crack cocaine that was packaged for sale." Tr. at 6. Following that stop, McCormick was recorded speaking to other members of the enterprise where they "discussed the stop and what was the basis." *Id*. "One of the things they discussed was how it had to do with Mr. Weston, and how there had been community complaints about Mr. Weston's cutting agent business, the Opaque business." *Id*. "Now ostensibly the Opaque business is a variety store but the reality is it is a place where cutting agents and other narcotics, preparation materials, are sold." Tr. at 7. AUSA DellaBetta further described how the criminal enterprise not only used cutting agents to sell drugs, but "are able to fund their enterprise by selling to other drug traffickers in the area." *Id*. As an example, a Mr. Jones "was intercepted communicating with Mr. McCormick about obtaining, on multiple occasions, cutting agents." *Id*. After Jones purchased a large quantity of cutting agents, the DEA executed a stop of Jones, resulting in the recovery of those cutting agents. *Id*. AUSA DellaBetta emphasized the reason for highlighting this evidence was to show that "a substantial way this enterprise funds itself is not only from drug sales it is engaging on its own but fueling other drug traffickers in the area." *Id*. AUSA DellaBetta added that McCormick "holds himself out as an employee" of the Opaque store. Tr. at 8.

With respect to Weston, AUSA DellaBetta noted that "this is a very different case." Tr. at 10. "However, Mr. Weston in not merely someone selling cutting agents." *Id*. "[T]he evidence will show that he is a fundamental part of the enterprise, helping fuel the narcotics trade in the enterprise by supplying vast accounts of cutting agents." *Id*. AUSA DellaBetta then detailed the

4

evidence that was seized from the Northwest Variety Store, which Weston owned and operated, pursuant to a search warrant executed by the Baltimore City Police Department in March of 2019: "a large amount of cutting agents as well as other types of packaging materials: gel capsules, vials, all the types of items that are needed for drug trafficking" and a shotgun.  Tr. at 11.

With respect to the Opaque business, AUSA DellaBetta stated that "Mr. Weston has continued to operate that, and the Court can see that as early as 1999, Mr. Weston has been on notice that you cannot engage in drug paraphernalia but nonetheless he has profited significantly from it."  *Id*.  AUSA DellaBetta further stated that "Mr. Weston holds the Opaque business out as again a variety store."  Tr. at 12.  AUSA DellaBetta then summarized an intercepted call of Weston speaking with McCormick earlier in 2019 where they spoke in code about McCormick needing a case of "bars," which "is commonly used to process heroin."  *Id*.  AUSA DellaBetta continued:

> Mr. Weston was confused at first because there was some confusion of the language they used.  They were trying to speak in code about boxes versus crates, something of that nature.  Ultimately he said, no, I don't have that right now.  The next day, though, Mr. Jones was able to get it from Mr. McCormick.  Mr. McCormick was able to get resupplied.  Sold to Mr. Jones, and that cutting agent was recovered from it.

Tr. at 12.

AUSA DellaBetta then summarized the evidence that was recovered from a search warrant executed at the Opaque business: "numerous boxes of cutting agents, of gel capsules, of packaging materials.  Everything boxed up ready for distribution."  *Id*.  A firearm was also recovered from the Opaque business.  Tr. at 8.  "They also recovered an iPad from that location, and actually at around the time the warrant was being executed, Mr. Weston received a message from Instagram that popped up on that iPad, some being sent for Mr. Sosa.  Mr. Antonio Jones from his Instagram account YBG Sosa saying they are hitting the shop essentially.  Warning."  Tr. at 12-13.

AUSA DellaBetta then summarized the evidence that was recovered from a search warrant

executed at Weston's residence: "numerous boxes of cutting agents, preparation ingredients, packaging materials . . . the DEA filled essentially a small van with cutting agents and gel capsules. Quick cappers, the devices used to fill capsules readily." Tr. at 13-14. They also recovered five firearms from Weston's bedroom, one of which was stolen. Tr. at 14.

   AUSA DellaBetta further noted that records obtained from PayPal showed that Weston had purchased large amounts of drug paraphernalia via the Internet:

>    [A] subpoena to Paypal revealed that Mr. Weston does significant amounts of business through the Internet to obtain these gel capsules, packaging items. In fact, for instance, in one of his most recent purchases in March of this year, he purchased what, based on that company's value for gel capsules, something around the amount of 10,000, over 10,000 gel capsules of heroin, what would be that equivalent.

Tr. at 13.

   AUSA DellaBetta then summed up the Government's argument for detention, focusing on Weston's role in the enterprise and referencing another intercepted call that Weston had made to McCormick:

>    This is a Defendant who has significant assets. He is intrinsically involved with this criminal street enterprise. He has profited significantly of it. And repeatedly he has demonstrated again a history here of trying to avoid law enforcement in the sense that continuing this business, continuing this illegal enterprise and trying to shift the way he does it.

>    Hiding things, putting signs up, moving objects. Nonetheless he knows what he is doing is illegal. He is fueling this gang. And he is dealing with them. He is operating with them. They listen to him.

>    In fact, with respect to the Stone Pit Community Center that Mr. Weston is trying to open, there is an interception where he actually spoke to Ronald McCormick, told him to find other gang members, including Ivan Potts – who is a bushman, a member of BGF, a leader – and told him to get the down, meet to the head, at the wall, where they sell drugs, because they are going to run things like a business.

>    The bottom line is he is intrinsically tied to this criminal enterprise. He is not merely a supplier. He is helping run them. He is helping fuel them.

And given all the danger here with the firearms, I am asking that he be detained.

Tr. at 14-15.

**B.     Judge Copperthite's Ruling**

At the conclusion of the hearing, Judge Copperthite ordered the detention of Weston, based

on the following:

> As to Mr. Weston, again in accordance with the Bail Reform Act 18 United States Code Section 3142(f) a detention hearing has been held.  I have concluded the following facts require the detention of the Defendant pending the trial of this case.
>
> This case is one in which the Government may properly seek detention. Defendant is charged under 21 United States Code Section 846.  The maximum term of imprisonment is 20 years.  Based on the Government's proffer, there is probable cause to me that the Defendant did in fact commit the offense.
>
> The Government is entitled to a presumption under 3142(e).  Defendant was an integral part of supplying large amounts of drug paraphernalia to this violent drug trafficking gang.
>
> But for his supplying of the paraphernalia maybe some of these drugs would have not reached the streets.  Or maybe they would have had to find alternate sources but certainly according to what I have heard in the Government's proffer, he is very intertwined with what this gang activity is.
>
> Defendant himself is a prohibited person and has a firearm recovered from his premises as well.  A large amount of packaging located in his residence.  That doesn't bode well for the argument that somebody else owns that place and somebody else has the paraphernalia that is in the store when he has the same thing in his residence.
>
> So I am entering an order of detention as to both Defendants.

Tr. at 31-33.

**III.     ARGUMENT**

**A.     Weston's Claims of Alleged Prosecutorial Misconduct are Meritless**

As a threshold matter, the Government disagrees with Weston's contention that AUSA

DellaBetta committed prosecutorial misconduct during Weston's detention hearing.  The vast

majority of the statements that Weston complains of were nothing more than AUSA DellaBetta's view of Weston's role in supplying drug paraphernalia to the criminal enterprise.  For example, statements such as, "he is a fundamental part of the enterprise, helping fuel the narcotics trade in this enterprise by supplying vast amounts of cutting agents," [Tr. at 10] "he is intrinsically involved with this criminal street enterprise," [Tr. at 14] "he is fueling this gang," [*Id.*] "he is intrinsically tied to this criminal enterprise," [Tr. at 15] " he has allied himself with gangs and he is helping them," [Tr. at 19] and "he is in bed with this enterprise," [Tr. at 29-31] all relate to AUSA DellaBetta's view of Weston's involvement and role in the criminal enterprise.  These statements were entirely proper because they were based on the evidence proffered and the reasonable inferences that could be drawn from that evidence.  *See United States v. Francisco*, 35 F.3d 116, 119-120 (4th Cir. 1994) ("It is undisputed that closing argument is not merely a time for recitation of uncontroverted facts, but rather the prosecution may make fair inferences from the evidence."). In the present case, AUSA DellaBetta relied on the following evidence when arguing that Weston should be detained:

- Large quantities of drug paraphernalia and a shotgun were seized from Weston's business, the Northwest Variety Store;

- Large quantities of drug paraphernalia and five firearms were seized from Weston's residence;

- Numerous boxes of cutting agents, gel capsules, and packaging materials and a firearm were seized from the Opaque business, where Ronald McCormick worked;

- Weston was intercepted on a phone call with McCormick during which they spoke in code; McCormick said he needed a case of "bars" and Weston eventually said "I don't have that now";

- Weston had a prior state conviction for drug paraphernalia;

- Weston's iPad was seized showing that at around the time the warrant was being executed at the Opaque business Weston received a "warning"

message;

- Weston was intercepted on another phone call with McCormick during which Weston told him to find other gang members, including Ivan Potts, a leader of a gang, to meet where they sell drugs "because they are going to run things like a business"; and

- PayPal records showed that Weston had purchased large amounts of drug paraphernalia via the Internet.

Based on this evidence, none of AUSA DellaBetta's statements concerning his view of Weston's role in supplying drug paraphernalia to the criminal enterprise were improper.

Weston further accuses AUSA DellaBetta of blatantly lying about where Weston's iPad was recovered.[2]  [ECF 808 at ¶7].  However, the actual location of its recovery, i.e., whether it was recovered from the Opaque business or was recovered from next door at the Stone Pit Community Center, was not as relevant as to *what* the iPad showed: that Weston had received a "warning" message about the search of the Opaque business.  To the extent that AUSA DellaBetta was incorrect about where the iPad had been recovered, it was harmless error based on the reasons stated by Judge Copperthite for ordering Weston's detention, which did not include any reference to the iPad.  A harmless error finding is further supported by the fact that this Court affirmed Judge Copperthite's detention order after holding an appeal hearing during which no mention of the iPad was made.  *See* Transcript of Appeal of Detention Order (Oct. 3, 2019) [ECF 292].

Finally, Weston asserts that AUSA DellaBetta "presented to the court that defendant Sean Weston owned and operated the Opaque (Cutting agent) business" whereas "DellaBetta knew for a fact that Mr. Carroll, and the two William brothers, Michael and Anthony Williams owned and operated the Opaque business."  [ECF 808 at ¶6].  To the extent that AUSA DellaBetta misspoke

---

[2] Weston is correct that the iPad was not seized from the Opaque business, but was recovered from the building next door.

about the technical on-paper ownership of the Opaque business, it did not amount to prosecutorial misconduct, especially considering that AUSA DellaBetta focused more on Weston's ties to those who were running the Opaque store and the fact that cutting agents, similar to those recovered from Weston's residence and business, the Northwest Variety Store, were seized from the Opaque business:

> Your Honor, I want to make it very clear here again, with respect to the connection to 3316, the Opaque store, the evidence will show that Mr. Weston helps insulate himself by doing this using for instance, Mr. Carroll.
>
> Mr. Carroll, the Court will see, for instance, with respect to it, Mr. Carroll has communications with Mr. Weston as well as Mr. McCormick. But the cutting agents were found not just in the Northwest Variety Store. Not just in Opaque. There were significant amounts found in Mr. Weston's house.
>
> And they appear to all be the same types of things. Mr. Weston's own Paypal account e-mail address, *he is the one purchasing all this and supplying*.

Tr. at 28-29 (emphasis added)

Further in support of his argument for detention, AUSA DellaBetta alluded to the evidence of the intercepted phone calls, including the call where Weston and McCormick spoke in code about supplying cutting agents, as well as phone calls with other members of the criminal enterprise:

> Antonio Johnson, Ronald McCormack, Ivan Potts are all members and leaders in the Crips and Black Gorilla Family, and yet they are talking to Mr. Weston, they are talking about, for instance, with Mr. McCormick and Mr. Weston, about cutting agents.
>
> Lo and behold, Mr. McCormick is operating that [Opaque] store of cutting agents. A gang member with a firearm that is right there on that block. And he is operating it alongside Mr. Weston.
>
> So this is not someone who is simply at arm's length profiting from selling cutting agents. He is in bed with this enterprise.

Tr. at 29-30.

These arguments are consistent with the arguments AUSA DellaBetta subsequently made

10

at Weston's detention appeal hearing, in which AUSA DellaBetta unequivocally stated that Weston was not the owner of the Opaque business:

> And the 3300 Airedale [sic] store is a little different in the sense that *Mr. Weston is not the owner on paperwork for that place*. But make no mistake, the evidence will show at trial that he was at the very least, a member of the joint venture operating that store. By that I mean the evidence will very well show that *Mr. Weston was supplying that store with the cutting agents*, the gel capsules, things of that nature that it was selling.

Transcript of Appeal of Detention Order at 6-7 (Oct. 3, 2019) (emphasis added) [ECF 292].

Because there was no prosecutorial misconduct in this case, the Court should deny Weston's motions to dismiss the indictment.

### B. Even if There Was Prosecutorial Misconduct, Absent a Finding That Weston was Prejudiced by Such Conduct, He is not Entitled to Dismissal of the Indictment

In order to prevail on a motion to dismiss an indictment based on alleged prosecutorial misconduct, a defendant must make a showing of prejudice. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."). "*Nova Scotia*'s holding applies equally to prosecutorial misconduct that occurs at the pretrial and trial stages of a prosecution." *United States v. Derrick*, 163 F.3d 799, 807 (4th Cir. 1998). Even misconduct that is deemed "egregious" will not suffice to warrant the dismissal of an indictment absent prejudice to the defendant. *United States v. Morrison*, 449 U.S. 361, 365-67 (1981) (holding that dismissal of an indictment was an inappropriate remedy for an alleged Sixth Amendment violation that did not prejudice the defendant, even though the conduct of the government agents was "egregious").

Here, Weston argues that he suffered prejudice because he was incarcerated for ten months. [ECF 808 at ¶9]. However, he has not specified how being incarcerated for those ten months in

any was prejudiced his ability to present a defense, e.g., "that any evidence was damaged or lost, that any witnesses could not be found, or that his case was harmed in any manner." *See United States v. Hopkins*, 310 F.3d 145, 150 (4th Cir. 2002) (finding that defendant's right to a speedy trial was not violated by two-year delay absent a showing of prejudice); *see also United States v. Goodson*, 204 F.3d 508, 516 (4th Cir. 2000) (reversing district court order dismissing the indictment with prejudice because defendant "suffered no demonstrable prejudice or threat of prejudice"). Because Weston has not made a showing that he suffered prejudice from the alleged misconduct, the Court should deny his motions to dismiss the indictment.

**C.    Weston's Claim of Selective Prosecution Lacks Merit**

Weston asserts that he "believes that he was a target due to a sixteen (16) year old past charges against him and perhaps the color of his skin, as racism is still plaguing the United States." [ECF 814 at ¶3]. Weston further claims that he is being prosecuted because of "guilt by association." [ECF 814 at ¶6]. According to Weston, "due to the fact that his community center is located next door to the Opaque store, the Government makes the assumption that he is involved in the conspiracy to sell illegal narcotics on the street." [ECF 814 at ¶5].

Weston's claims are not a defense on the merits of the criminal charges, but an independent assertion that the prosecutor has brought the charges for reasons forbidden by the Constitution, including the exercise of protected statutory and constitutional rights. *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *Wayte v. United States*, 470 U.S. 598, 608-609 (1985). A claim that the prosecutor has brought a charge for reasons forbidden by the Constitution asks the Court to exercise judicial power over a "special province" of the Executive. *Id*. The Attorney General and the United States Attorneys retain broad discretion to enforce the Nation's criminal laws. *Armstrong*, 517 U.S. at 464. As a result, a presumption of regularity supports their prosecutorial decisions and in the absence of "clear evidence" to the contrary, court's presume that prosecutors

have properly discharged their official duties. *Id*.

In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file generally rests entirely in his discretion. *Id*. Of course, a prosecutor's discretion is subject to the constitutional constraint imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, which dictates that the decision whether to prosecute may not be based upon an unjustifiable standard, including the exercise of protected statutory and constitutional rights. *Id*. In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "clear evidence" to the contrary. *Id*. at 465. In that regard, courts are properly hesitant to examine the decision whether to prosecute. *Id*.

When the government looks beyond the law itself to arbitrary considerations, such as control over a defendant's exercise of constitutional rights, as the basis for determining the law's applicability, constitutional protection is provided to a defendant by the equal protection clause of the Constitution. *Id*. at 465. The requirements for a claim that a prosecution has been brought for impermissible reasons draw on "ordinary equal protection standards," wherein the claimant must demonstrate that the federal prosecutorial policy had a "discriminatory effect" and that it was motivated by a discriminatory purpose. *Id*.

In the rare situation in which the decision to prosecute is so abusive of the discretionary powers entrusted to the attorneys of the United States as to encroach on constitutionally protected rights, it is the role of the judiciary to protect against unconstitutional deprivations. *See United States v. Johnson*, 577 F.2d 1304, 1307-08 (5th Cir. 1978) ("[T]he judiciary performs the very limited role of secondarily measuring the primary decision of the prosecutor against constitutional standards."). This case does not present that situation. This prosecution is a garden-variety case

alleging drug paraphernalia, importation of goods by false statements, tax evasion, willful failure to file tax returns, and money laundering violations. Defendant presents no clear evidence to the contrary.

To demonstrate that a prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose, a defendant "must establish both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith." *United States v. Hare*, 820 F.3d 93, 98-99 (4th Cir. 2016). The standard for obtaining discovery in support of a selective prosecution claim is that the defendant must produce "some evidence" making a "credible showing" of both discriminatory effect and discriminatory intent. *Id*.

The simple answer to Weston's claim is that the conduct for which he is being prosecuted is not ordinarily ignored. There is no intentional and purposeful discrimination on the part of the Government shown by the defendant herein or any evidence that his selection for prosecution was invidious or in bad faith. Weston fails to establish, prima facie, that he is being prosecuted for conduct which other persons, similarly situated, were not generally prosecuted. For example, Weston fails to point out similarly situated persons whose tax reporting violations or drug paraphernalia sales and shipments are known and ignored and in fact not prosecuted. Further, Weston has not identified any evidence suggesting that the decision to prosecute him was invidious or in bad faith. For these reasons, Weston's motion to dismiss the indictment based on alleged selective prosecution should be denied.

### D.    Weston's Claim of Vindictive Prosecution Lacks Merit

Weston also alleges that the decision to prosecute him was motivated by vindictiveness. Weston claims that he "is being targeted because the government wants to take control of the community center, and therefore arrested the wrong person." [ECF 814 at ¶10].

14

A vindictive prosecution, that is, a prosecution which has an actual retaliatory motivation, or a prosecution based upon an unjustifiable standard, such as race, religion, or other arbitrary classification, including the exercise of statutory and constitutional rights, is an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. *Wayte v. United States*, 470 U.S. 598, 608 (1985). "It is now well established that a prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). "Although prosecutorial decisions must not be made in retaliation against defendants for exercising their legal rights, courts must nonetheless be cautious not to intrude unduly in the broad discretion given to prosecutors in making charging decisions. Indeed, a prosecutor's charging decision is presumptively lawful." *Id*. at 315.

Prosecutorial vindictiveness is, in some contexts, presumed where a prosecutor takes action that is detrimental to a defendant after the defendant exercises a legal right. *United States v. Goodwin*, 457 U.S. 368, 373 (1982). However, prosecutorial vindictiveness is not presumed when a prosecuted adds additional charges to an indictment prior to trial. *Id*. at 382 ("[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."). To establish prosecutorial vindictiveness, "a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314.

In the present case, although Weston claims that he is being vindictively prosecuted because "the government wants to take control of the community center," [ECF 814 at ¶10] he

cites no facts suggesting that the decision to prosecute him had anything to do with the community center. Further, Weston has not specified any objective evidence indicating that the prosecutors acted with hostility or ill will toward him. In any event, because Weston has not yet been tried, the Government's charging decision is presumptively lawful. Based on the foregoing, the Court should deny Weston's motion to dismiss the indictment based on alleged prosecutorial vindictiveness.

### E.    Weston's Claim of Ineffective Assistance of Counsel Lacks Merit

Weston further claims that he is entitled to the dismissal of the indictment based on alleged ineffective assistance of counsel. [ECF 815]. Specifically, Weston asserts that his former attorneys "all have attempted to miss guide Sean Weston pertaining to the discovery process, failure to summit correct motions, failure to hire an investigator, violation of Brady, falsification of facts and just did not act competently on behalf of Sean Weston." *Id*. at 2. Weston further asserts that the "attorneys performance was so unreasonable while knowing their was exculpatory evidence that prove Sean Weston was innocent of the charges." *Id*.

To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that his counsel's "performance fell below an objective standard of reasonableness, especially given that in evaluating counsel's performance, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2015) (citations, brackets, and quotation marks omitted). A defendant must also show that he was prejudiced by his attorney's performance, i.e., a defendant "would have to show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' and that 'the result of the proceeding was fundamentally unfair or unreliable.'" *Id*. (quoting *Sexton v. French*, 163. F.3d 874, 882 (4th Cir. 1998)). "It is well established that 'a defendant may raise [a] claim of ineffective assistance

of counsel in the first instance on direct appeal if and only if it conclusively appears from the record that ... counsel did not provide effective assistance.'" *Id.* (quoting *United States v. Smith*, 62 F.3d 641, 651 (4th Cir. 1995)).

Here, the record demonstrates that Weston has not been satisfied with the seven attorneys who at different times represented him in this case.  However, instead of providing the Court with concrete examples of how these attorneys' performances were ineffective and how he suffered prejudice, Weston blanketly asserts that *all* of these attorneys were ineffective in representing him. Weston's assertions fall far short of establishing an ineffective assistance of counsel claim.  In any event, even if it were true that *all* of Weston's previous seven attorneys were ineffective, that would not justify a dismissal of the indictment.  Because Weston has not provided any authority holding that the dismissal of an indictment is the appropriate remedy for an ineffective assistance of counsel claim, the Court should deny his motion.

**CONCLUSION**

For the foregoing reasons, the Court should deny Weston's motions to dismiss based on prosecutorial misconduct, selective prosecution, and vindictive prosecution [ECFs 807 and 808], fraud upon the Court [ECF 814], and ineffective assistance of counsel [ECF 815].

Respectfully submitted,

Erek L. Barron
United States Attorney


By: *Lindsey McCulley*
Lindsey McCulley
Assistant United States Attorney
United States Attorney's Office
36th South Charles Street, 4th Floor
Baltimore, MD 21202
(410) 209-4800 (telephone)

John Sullivan
Senior Litigation Counsel
U.S. Department of Justice
Tax Division

Filed: June 28, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of June 2022, a copy of the Government's Consolidated Opposition to Defendant's Motions to Dismiss the Indictment will be placed in the mail to Sean Weston at his residence on Glen Hannah Court in Windsor Mill, Maryland.

*Lindsey McCulley*
Lindsey M. McCulley
Assistant United States Attorney